IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CESAR AGOSTO CHACON-VELA,<br>    Movant, | :<br>: | MOTION TO VACATE<br>28 U.S.C. § 2255 |
| | : | |
|     v. | :<br>: | CRIMINAL INDICTMENT NO.<br>1:07-cr-0148-JEC-2 |
| UNITED STATES,<br>    Respondent. | :<br>: | CIVIL FILE NO.<br>1:09-cv-2280-JEC |
| | : | |

## ORDER AND OPINION

Defendant[1] Cesar Agosto Chacon-Vela, has filed this § 2255 motion [255] to vacate his federal conviction and sentence. This case was originally assigned to the Honorable Beverly B. Martin, before whom defendant pled guilty and was sentenced. Defendant argues, among other things, that Judge Martin violated Fed. R. Crim. P. 11(c)(1) by impermissibly participating in plea discussions during the course of the plea colloquy. The Government opposes defendant's motion, arguing that his contentions are not meritorious. This § 2255 motion is before the undersigned for resolution.

---

[1] Mr. Chacon-Vela is actually the movant, but as most of the discussion concerns the criminal proceeding at which he was the defendant, the Court will refer to him as the "defendant."

## I.    PROCEDURAL BACKGROUND

Defendant was indicted for conspiracy to possess with intent to distribute at least five kilograms of a mixture containing cocaine and for the substantive possession of this cocaine mixture with the intent to distribute. (Indictment [1].) Following the negotiation of a plea agreement with the Government, he appeared before Judge Martin (hereinafter referred to as "the Presiding Judge" or "the judge") to enter his plea of guilty to the conspiracy count.

During this plea colloquy, the defendant wavered as to the factual basis for his plea and made comments that suggested he might not be guilty of the charged offense. It is the colloquy between the defendant and the Presiding Judge at the point of this vacillation that has given rise to the present motion. Following that conversation and a recess, the defendant returned to the courtroom, acknowledged his guilt, and the plea, along with the plea agreement, was accepted.

A couple of months later, a sentencing hearing was held. Calculating the advisory Guidelines range as 108 to 135 months, the Presiding Judge sentenced the defendant to a 108-month term

AO 72A
(Rev.8/8
2)

of imprisonment. (*See* Docket Entries 05/02/2008-07/10/2008; Sentencing Hr'g Tr. [230] at 3, 4.)

The plea agreement had included a waiver of the defendant's right to appeal his conviction or sentence and of his right to collaterally attack his sentence. (Plea Agreement [126], Attach. at 5; Plea Hr'g Tr. [229].) Nevertheless, the defendant filed a Notice of Appeal, and was appointed new counsel on that appeal. ([177]; [193].) In that appeal, the defendant made a *Booker*[2] argument, contending that his 108-month term of imprisonment was unreasonable. (Br. of Appellant, 2009 WL 407577, *United States v. Chacon-Vela*, No. 08-14151-DD (11th Cir. Jan. 29, 2009.) Defendant did not challenge the validity of his plea of guilty. The Government moved to dismiss the appeal based on defendant's waiver of his appeal rights in his plea agreement, and the Eleventh Circuit granted that motion. (*See* Order [247].)

Acting *pro se*, defendant subsequently filed this § 2255 motion, in which he raises three grounds for relief: (1) his guilty plea was unlawfully induced by the Court's violation of FED. R. CRIM. P. 11(c)(1); (2) his guilty plea was not knowing,

---

[2] *United States v. Booker*, 543 U.S. 220 (2005).

intelligent, or voluntary; and (3) trial counsel, Mr. Rowsey, had provided ineffective assistance of counsel by preventing him from entering a knowing and voluntary plea. ([255] at 7, 10, 15, 21, 23.)

## II. **VIABILITY OF A CHALLENGE TO A GUILTY PLEA IN A § 2255 PETITION**

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255. A collateral challenge to a federal conviction and sentence, however, "may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004). If available challenges to a federal criminal conviction or sentence are not advanced on direct appeal, those claims will be considered procedurally defaulted in a § 2255 proceeding. *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994).

Thus, as a general rule, claims that a § 2255 defendant could have asserted, but did not assert, on direct appeal are procedurally barred, absent a showing of "cause for the default

4

and actual prejudice resulting from the alleged error" or of a fundamental miscarriage of justice that "probably resulted in the conviction of one who is actually innocent." *Mills*, 36 F.3d at 1055-56 (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). When the respondent asserts procedural default as a defense and the petitioner makes no attempt to show cause for the default and prejudice therefrom, or his actual innocence, the defaulted claims cannot be considered in a collateral proceedings in federal court. *See Gray v. Netherland*, 518 U.S. 152, 159, 162 (1996).

It is up to the defendant, however, to raise the affirmative defense of procedural default. It is true that a court may *sua sponte* raise the issue, if it provides the defendant with an opportunity to show cause for his default. *See Esslinger v. Davis*, 44 F.3d 1515, 1528 (11th Cir. 1995); *see also United States v. Wiseman*, 297 F.3d 975, 980 (10th Cir. 2002). Nevertheless, the Court is not required to invoke a procedural bar *sua sponte*. *Trest v. Cain*, 522 U.S. 87, 89 (1997); *see also Howard v. United States*, 374 F.3d 1068, 1073 (11th Cir. 2004)(holding in § 2255 case that Government can waive procedural bar defense); *Shukwit v. United States*, 973

AO 72A
(Rev.8/8
2)

F.2d 903, 904 (11th Cir. 1992)(stating that procedurally defaulted claim was cognizable in § 2255 proceeding when Government had failed to raise procedural default in district court).

In the present case, the defendant challenges the voluntariness of his plea, relying on the alleged involvement of the Presiding Judge in plea negotiations, in violation of Rule 11. Although defendant agreed to an appeal waiver, the voluntariness of a plea may be raised on direct appeal, even when there is an appeal waiver. *See United States v. Bushert*, 997 F.2d 1343, 1350-52 (11th Cir. 1993). Thus, as a general rule, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998)(internal quotation marks omitted); *United States v. Pearl*, 288 Fed. App'x 651, 655 (11th Cir. 2008).

As noted, defendant did not challenge his guilty plea on direct appeal, as he should have done and, accordingly, this issue was potentially defaulted procedurally. Nevertheless, the

6

Government has not raised the defense of procedural default, and the Court will address the merits of defendant's claims regarding his guilty plea, just as the Government has done in its own response. *See Shukwit*, 973 F.2d at 904.

## III.    PLAIN ERROR STANDARD OF REVIEW

Before addressing the merits of the claim, the standard of review must be identified. As noted, defendant never objected to the Presiding Judge's conduct at the district court level, prior to sentencing or thereafter. Because this is the first time defendant has raised the voluntary nature of his plea, a plain error review standard applies. *See United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir. 2003). *Cf. Sotirion v. United States*, 617 F.3d 27, 30, 32-34 (1st Cir. 2010)(holding that Government waived procedural default argument on the movant's § 2255 challenge to validity of appeal waiver and applying plain error on collateral review). "Under plain error review, there must be (1) an error, (2) that is plain, (3) that affects the defendant's substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. De La Garza*, 516 F.3d 1266, 1269 (11th Cir. 2008), *cert. denied*, 129 S. Ct. 1668

7

(2009). An error is typically deemed to affect substantial rights only when that error has been prejudicial. *Id.* Further, "a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Evans*, 478 F.3d 1332, 1338 (11th Cir. 2007).

As indicated in the discussion below, however, a defendant does not need to show prejudice when the Court has committed plain error by participating in plea discussions in violation of Rule 11(c)(1)'s literal terms. *See United States v. McCray*, 280 Fed. App'x 945, 946 (11th Cir. 2008)(citing *Corbitt*, 996 F.2d at 1135), *cert. denied*, 130 S. Ct. 1541 (2010).

## IV. **PLEA COLLOQUY**

At the outset of the plea hearing, the defendant confirmed that he wanted to plead guilty. (Plea Hr'g Tr. [229] at 2.) The Presiding Judge went through the inquiry required by Rule

AO 72A
(Rev.8/8
2)

11(b)(1)-(2).[3]   Nothing noteworthy occurred during this exchange.

Thereafter, counsel for the Government set out the elements of the charged offense of conspiracy. (*Id.* at 16.)   The Government then attempted to lay a factual basis for the plea by summarizing the facts it would prove at trial: specifically, that defendant had traveled from Mexico to Atlanta with co-defendant Alberto Lozano-Schadtler for the purpose of participating in a 60-kilogram cocaine deal. The defendant engaged in conversations with Lozano-Schadtler about the deal and "ultimately participated in the receipt of 60 kilograms of cocaine, the packaging of that cocaine after its receipt from a courier into luggage that was loaded into a Chevy S-10 that was driven by Lozano-Schadtler...." (*Id.*)   In short, the

---

[3] The Court explained to defendant the rights that he would be giving up by pleading guilty, including the rights to trial by jury, to counsel, to be presumed innocent, to be proven guilty beyond a reasonable doubt, to subpoena witnesses to testify on his behalf, to cross-examine the witnesses against him, to object to the Government's evidence and offer his own evidence, and to testify or refrain from testifying. (*Id.* at 6-8.)   Defendant stated that he understood. (*Id.* at 8-9.) Defendant answered in the negative when the Court asked him whether anyone had promised him something not included in the plea agreement to cause him to plead guilty, had threatened him into pleading guilty, or had told him to tell the Court anything other than the truth. (*Id.* at 14-15.)

AO 72A
(Rev.8/8
2)

Government concluded, the defendant had participated with another person in an effort to knowingly distribute cocaine in an amount in excess of 5 kilograms. (*Id.*)

This summary was too general for the Presiding Judge, who asked the prosecutor what "exactly" the defendant had done "to further the conspiracy." (*Id.* at 17.) The prosecutor responded that the defendant had engaged in discussions with both Lozano-Schadtler and an undercover police officer about the cocaine deal. He had also traveled to an apartment in Cumming, Georgia where he and others made arrangements to receive the 60 kilograms of cocaine. Although the defendant was not present when that occurred, he "subsequently returned to the residence and helped physically load the cocaine in the suitcases." (*Id.*) In addition, he had participated with others in buying the suitcases from Wal-Mart in which the cocaine was ultimately concealed. (*Id.*)

The Presiding Judge indicated her satisfaction with this summary and inquired of the defendant whether the prosecutor's recitation of the facts was accurate. The defendant indicated that the summary was "partly" accurate. (*Id.* at 17.) As to the part that was apparently inaccurate, the defendant stated that

he never had the cocaine in his possession. (*Id.* at 18.) The Presiding Judge reminded the defendant that he did not have to possess the drugs as long as he had an agreement with others who did so. To this overture, the defendant responded, "When I found out what was going on, I decided to separate myself....Unfortunately, the other gentleman that was a friend of mine, and I didn't have any other choice." (*Id.*)

The Presiding Judge asked whether at some point the defendant knew that his friend was getting cocaine to distribute. The defendant responded that he only became aware "at the end." (*Id.*) In response to the court's question whether he had taken some step to help the plan be carried out, the defendant answered, "No," noting that he knew at the end and then tried to "separate" himself. (*Id.*) The defendant did acknowledge that he asked his brother (co-defendant Jose Chacon-Vela) to loan "him" [presumably Lozano-Schadtler] the brother's truck so that Lozano-Schadtler "could go do his thing," after which "we were going to be separated from him because we didn't want to continue participating in this." (*Id.* at 19.) The defendant also acknowledged that he had bought the suitcases, but denied that he knew what they were for at the time. (*Id.*)

AO 72A
(Rev.8/8
2)

At this point, the Presiding Judge indicated that the defendant appeared to be denying that he had knowingly participated in the conspiracy. (*Id.*) Defense counsel, Mr. Rowsey, acknowledged his own discomfort at proceeding with the guilty plea, given defendant's apparently unexpected statements. At this point, the Presiding Judge made the remarks that have led to this motion to vacate:

> You know what the problem always is, you know, what's a jury going to do.  Just because you can't plead guilty to it doesn't mean the charge is going to go away. It's all the same to me because I'm going to try the case on Monday anyway.  <u>But in terms of the difference in your sentence, Mr. Chacon-Vela, if you plead guilty as opposed to what your sentence would be if you go to trial, there's a pretty significant difference</u>.

(*Id.* at 20)(emphasis added.)   After a bit more conversation, defense counsel requested a few minutes to speak with his client.  The Presiding Judge inquired whether the Government was interested in pursuing a misprision of a felony charge, given the facts that the defendant had agreed to, but the prosecutor indicated no interest in that. (*Id.* at 21.)

The Presiding Judge then agreed to defense counsel's request to talk to his client, stating:

> Well, I'll let you talk to him about it.   It doesn't get much more serious than this.

12

AO 72A
(Rev.8/8
2)

If you are not guilty of this crime, then it's not appropriate for me to let you plead guilty to it. <u>On the other hand, I see a lot of trials. It's very unusual for somebody to go to trial on a drug charge and get acquitted in this court. I mean, it can happen. I hear it happens. I don't see it</u>.

My job is to just see if there's a factual basis for him to plead guilty to the charge, and I really haven't heard one yet.

(*Id.* at 22)(emphasis added).

Subsequently, defense counsel and the defendant returned to the courtroom, and counsel indicated that they were ready to proceed. (*Id.* at 24.) The Presiding Judge reminded the defendant that this was "a big decision" for the defendant, and the defendant concurred that he was aware that it was his decision whether to proceed with the guilty plea. (*Id.*) Then, in response to direct questions from the Presiding Judge, the defendant affirmed that he was in the house, was aware that cocaine was there, saw someone else put the cocaine in the suitcase, and picked up one of the suitcases and put it in the truck to allow the cocaine to be delivered. (*Id.*) The Presiding Judge ultimately concluded that the defendant's

13

admission to knowingly loading cocaine into the truck was
sufficient to establish a factual basis.  (*Id.* at 25.)[4]

---

[4]  The verbatim colloquy was as follows:

Q.  Okay.  I know this is a big decision for you that the
facts and the law may seem close. Ultimately you know it's
your decision about whether to proceed or not.  Do you
understand that?

A.  Yes, your honor.

Q.  Okay.  So what I understand is you were in the house
where the cocaine was located, and at that time you became
aware that there was cocaine in the house?

A.  Yes, your honor.

Q.  And you saw it and somebody else put it in suitcases;
is that right?

A.  Yes, your honor.

Q.  And then after that you picked up at least one of the
suitcases and put it in the truck so it could be delivered;
is that right?

A.  Yes, your honor.

.  .  .

Q.  The elements of the crime are conspiracy, is that there
is an agreement or an arrangement or an understanding
between you and somebody else to do something that's
against the law, and in this case the act that was against
the law was the possession of the cocaine with intent to
distribute it.  Do you understand each one of those
elements?

A.  Yes, your honor.

14

After other questions required by Rule 11, the Presiding Judge inquired whether the defendant had any questions, to which the latter answered, "No. I understood everything perfectly." (*Id.* at 29.) She asked defendant whether he had received enough time to think about his plea and to talk with Mr. Rowsey, and he answered, "Quite a bit, yes." (*Id.* at 29.)

**V.   DISCUSSION**

   A.   Alleged Violation of Rule 11(c)(1) by Presiding Judge

Defendant argues that, through some of the statements quoted above, the Presiding Judge impermissibly participated in plea discussions, thereby violating Rule 11(c)(1). Defendant points to  two comments made by the Presiding Judge following statements by the defendant that he had been unaware of the cocaine plot until the very end, when he then tried to remove himself from the situation. Specifically, jumping to the

---

   Q.   Okay.  And I'm ready to find that your act of loading the cocaine into the car or the truck is sufficient to satisfy those elements.  Is that what you're asking me to do?

   A.   Yes, your honor.

   The Court:  Okay.  I find there is a sufficient factual basis for Mr. Chacon-Vela to plead guilty to this crime.

(*Id.* at 24-25.)

15

AO 72A
(Rev.8/8
2)

prospect of a trial, given defendant's disavowal of his knowing involvement in the venture, the Presiding Judge indicated that she could certainly add the defendant to the trial of his co-defendants, which was set for the next week. The Presiding Judge expressed concern, however, that there could be a "pretty significant difference" in the defendant's sentence if he went to trial, as opposed to pleading guilty. Second, the Presiding Judge noted her dilemma, in that she could not let the defendant plead to a crime if he was not guilty, but, on the other hand, she feared that if she forced defendant to go to trial, he would likely be convicted. She noted that, in her experience, it was very unusual for someone to be acquitted of a drug charge and that, while she had heard of such occurrences, she had not experienced this phenomenon.

Defendant contends that the Presiding Judge violated Rule 11. As noted, the Court must use a plain error standard to evaluate defendant's claim. Also as noted, to succeed under a plain error test, the defendant must show that error was committed, that this error was plain, that it affected the defendant's substantial rights, as well as the fairness,

16

integrity, or public reputation of judicial proceedings. *Supra* at 7-8.

When a court has committed plain error by participating in plea discussions in violation of Rule 11(c)(1)'s literal terms, a defendant does not need to show prejudice. When a court has otherwise violated Rule 11, however, a defendant can prevail only if he demonstrates a reasonable probability that, but for the error, he would not have entered the guilty plea. *Id.*

> 1. Caselaw Concerning Alleged Rule 11(c)(1) Violations

As defendant is contending, for the most part, that the Presiding Judge violated Rule 11(c)(1), the Court will apply the standard set out above for alleged violations of that provision.[5] The first question is whether the Presiding Judge

---

[5] In Ground Two, defendant further argues that his plea was unknowing and involuntary because, during the recess, his attorney talked him into answering "yes" to the Court's questions about the factual basis and reminded him that the Court had told him the consequences of going to trial instead of pleading guilty. (*Id.* at 15-20.) The Court will assume, for purposes of this Order only, the accuracy of this representation. While, as a general matter, a plea could be presumed to be involuntary if an attorney has essentially forced his client into pleading guilty, here the defendant's allegations are integrally related to the underlying Rule 11(c)(1) claim, and the Court will follow the standards used to analyze such claims.

AO 72A
(Rev.8/8
2)

committed error through her two remarks.  Rule 11(c)(1) permits
the prosecutor and defense attorney to discuss and reach a plea
agreement.  It, however, prohibits any involvement by the judge,
noting that "[t]he court must not participate in these
discussions."

As the Government notes, prior to the plea hearing, the
Presiding Judge did not participate in plea discussions with
counsel, advise on particular plea provisions, or encourage a
plea.  At the time the plea hearing began, the parties had
arrived at a plea agreement,[6] which had been signed and awaited
presentation to the court.  Indeed, the Presiding Judge never
dickered over any terms of the plea agreement during the plea
hearing.

_____

[6]  The plea agreement [126-1] was simple and straight-
forward.  The Government and defendant agreed that no role
reduction under Sentencing Guidelines §§ 3B1.1 or 3B1.2 was
warranted, but also acknowledged that the Court could decide
differently.  ([126-1] at ¶ 2.)  The Government also agreed to
recommend that the defendant receive a 3-level downward
adjustment for acceptance of responsibility.  (*Id.* at ¶ 6.)
Finally, the defendant waived his right to appeal his conviction
or sentence or collaterally attack his sentence, except that the
defendant would be able to appeal a sentence higher than the
otherwise applicable advisory guideline range.  (*Id.* at ¶ 11.)

18

AO 72A
(Rev.8/8
2)

Yet, a judge can run afoul of Rule 11, even if the judge does not violate the rule in a "literal" sense. This is so because caselaw has put a "gloss on the rule to implement a broader purpose." *United States v. Johnson*, 89 F.3d 778, 782 (11th Cir. 1996). At bottom, the rule is interpreted to "entirely eliminate judicial pressure from the plea bargaining process." *United States v. Diaz*, 138 F.3d 1359, 1362 (11th Cir. 1998). Broad interpretations of the rule have arisen out of a concern that "judicial intervention may coerce the defendant into an involuntary plea that he would not otherwise enter."[7] *United States v. Corbitt*, 996 F.2d 1132, 1134 (11th Cir. 1993).

There are largely two types of comments by district judges that have been deemed to violate Rule 11(c)(1): (1) indicating that the evidence is strong against the defendant and therefore he would be wise to plead and (2) suggesting that the defendant

---

[7] In addition to a concern that judicial participation in plea negotiations creates a risk that a defendant will feel coerced into accepting a proposed agreement, two additional rationales for the strict prohibition are: (1) protection of the integrity of the judicial process and (2) preservation of a judge's impartiality after the negotiations are concluded. *United States v. Casallas*, 59 F.3d 1173, 1178 (11th Cir. 1995).

AO 72A
(Rev.8/8
2)

might get a longer sentence if he goes to trial.[8]  *See, e.g.,*
*United States v. Diaz*, 138 F.3d 1359 (11th Cir. 1998)(during
plea colloquy with co-defendant at which defendant, who had not
indicated he wanted to plead, was directed to be present, the
judge opined that evidence was compelling against the defendant
and she would be glad to give him a trial, but he was risking
a 10-year sentence); *United States v. Corbitt*, 996 F.2d 1132,
1133 (11th Cir. 1993)(during status conference, after counsel

---

[8]  The Eleventh Circuit has recently gone even further in
expanding the scope of its prohibition against district judges
engaging in pre-plea discussions with a defendant on the topic.
In *United States v. Tobin*, ___ F.3d ___, Nos. 09-13944, 09-
13945, 09-13975, 09-14009, and 09-14012, 2012 WL 1216220 (11th
Cir. Apr. 12, 2012), the Circuit Court held that a district
judge violated Rule 11(c)(1), even though she did not make the
above types of comments, but merely advocated, in an arguably
persistent way, to the defendants and the Government, as a
group, that the defendants should consider pursuing plea
negotiations. *Id*. at *34-*39.  The panel opinion indicates that
"in light of all of these comments," the district court violated
Rule 11.

Although there was no discussion in the opinion whether
these general comments would have undone a guilty plea later
entered by a particular defendant, it was sufficient to allow
the complaining defendant, who went to trial, to have his case
remanded for a new judge to impose sentence.  Clearly, in the
*Tobin* case, the complaining defendant was not coerced into
pleading guilty:  he went to trial.  A remand was ordered to
avoid a perception that the judge might have been motivated to
impose a higher sentence because the defendant did not accede
to her arguable suggestion to plead guilty.

AO 72A
(Rev.8/8
2)

requested more time for plea negotiations, judge gave a short deadline and indicated that if defendants decided not to plead and were convicted at trial, they would get "a fair sentence, fairly high"); *United States v. Davila*, 664 F.3d 1355, 1357 (11th Cir. 2011)(during *in camera* hearing in which defendant was complaining that his attorney was discussing no viable defense and simply urging him to plead guilty, magistrate judge noted that sometimes there are no defenses and encouraged the defendant to plead guilty in order to receive acceptance of responsibility and a lower sentence).

Of course, once a plea agreement has been made and the judge is conducting a plea hearing to determine whether to accept the plea, the judge's exploration of the terms of the plea agreement may often require the latter to probe the defendant's understanding of the promises being made. Necessarily, in spelling out what a particular recommendation means, the judge and counsel will be implicitly, or perhaps even explicitly, indicating what the absence of a recommendation could mean. Inherent in such a discussion is a comparison between possible outcomes without the particular term in the plea agreement, as contrasted with a plea agreement containing

the particular promise. Indeed, a full discussion of the terms of the plea agreement is often necessary to make sure that the defendant understands the ramifications of the plea agreement and that the plea is truly knowing and intelligent. Otherwise, a plea colloquy is little more than a formalistic exercise, with no effort to insure that the defendant understands exactly what he is agreeing to and what benefit or detriment the particular plea agreement may pose for him.

Perhaps for this reason, the Eleventh Circuit has noted the absence of caselaw holding that a court's post-agreement remarks, after execution of the plea agreement during a plea colloquy, can violate Rule 11. *United States v. Telemaque*, 244 F.3d 1247, 1249 (11th Cir. 2001)("no case that [defendant] cites, or that we have located, holds that a court's *post-*agreement remark can violate the Rule.") *Accord United States v. Cone*, 323 Fed. App'x 865, 870 (11th Cir. 2009)(where comments of trial judge at issue occurred only after the plea had been tendered and went only to the factual basis, and the defendant's efforts to deny same, "it is doubtful that [defendant] may invoke Rule 11(c)(1) because he and the government had already executed the proposed plea agreement."). *See also Diaz*, 138

F.3d at 1363 ("The district court's role under Rule 11 is to evaluate a plea agreement once it has been reached by the parties and disclosed in open court. Prior to that time, a court should not offer comments touching upon proposed or possible plea agreements.").

Yet, even if a plea agreement has been executed, the prohibition against judicial comments that confirm the wisdom of a guilty plea is nevertheless resurrected if, during the course of the plea colloquy, the defendant begins to waver about whether he actually wants to plead guilty. In *United States v. Allen,* 305 Fed. App'x 654 (11th Cir. 2008), the defendant began vacillating during the plea colloquy about whether he actually wanted to plead guilty, to which the district court responded:

> So, I'll tell you how it looks to me from here, Mr. Allen. You're totally gambling with your life. It's going to be hard to beat the charges. There's a wiretap. If you want to go to prison for life, go to prison for life. You leave the federal system in a box. There's no parole...

*Id.* at 657.

The defendant pled guilty, but appealed, and the Eleventh Circuit reversed, noting that there was a reasonable probability that, but for the district judge's comments, the defendant would not have continued with the plea of guilty:

23

> Our confidence that Allen would have pleaded guilty
> without the judge's comments is undermined because he
> was wavering about that decision at the time and the
> judge's statements were not stray or isolated remarks
> but were instead focused and emphatic statements
> conveyed in graphic language.

*Id.*

### 2. Application of Above Caselaw to Present Case

In the present case, after a plea agreement had been executed and during the plea colloquy, the Presiding Judge made two problematic comments. That is, she indicated both her prediction that the defendant would be convicted if he went to trial and her opinion that he would suffer a harsher sentence after a trial than if he pled guilty. If the judge made these comments at a time when the defendant was wavering about whether to plead guilty, then the plea would clearly have to be vacated based on the judge's efforts to encourage an undecided defendant to enter a plea of guilty.

The wrinkle in this case is that the defendant never indicated that he was wavering about his decision to plead guilty. Instead, he was wavering as to how fully he would fess up to his criminal conduct. Those are two different things. When asked about what he had done, the defendant minimized his conduct by refusing to affirm his knowledge that criminal

24

activity was afoot until "the end." That is, he acknowledged doing certain acts that furthered the drug conspiracy, but denied that he knew that his cohorts were involved in a plan to distribute drugs.

In making the remarks at issue, the Presiding Judge was clearly acting with the best of intentions. It is a common trait of human beings to minimize their wrongdoing and to look for explanations that will excuse bad conduct. This trait is sometimes accentuated in criminal defendants. Concerned that defendant's efforts to minimize his conduct would prevent her from accepting his plea--and thereby force the defendant into going to trial, with all the negative consequences that the judge perceived could then befall him--the Presiding Judge unfortunately skipped a step in the analysis. Specifically, a trial was not the inevitable outcome of the defendant's initial refusal to completely acknowledge his guilt.

Rule 11(b)(3) requires the district court to determine that there is a factual basis for a guilty plea. It nowhere conditions the finding of that factual basis on a defendant's acknowledgment of his guilt. Indeed, long ago, in *North Carolina v. Alford*, 400 U.S. 25 (1970), the Supreme Court held

that a trial court may accept a guilty plea from a defendant who maintains his innocence, as long as the plea was otherwise knowing and intelligent.[9]

Thus, the Presiding Judge could have required the prosecutor to go through a more thorough, point-by-point recitation of the evidence.[10] If the defendant continued to deny certain elements of the offense, but the Presiding Judge was satisfied that there nonetheless was a factual basis, she could have made sure that the defendant understood his right to go to trial and force the Government to prove him guilty. If the

---

[9] A district court can, in its discretion, refuse to accept an *Alford* plea. *United States v. Dykes,* 244 Fed. App'x 296, 298 (11th Cir. 2007). Of course, as is seemingly becoming the case with every action a judge takes in the guilty plea area, the district court can be challenged if it rejects an *Alford* plea-- *Dykes, supra*, and *U.S. v. Medina-Flores*, 271 Fed. App'x 827, 829-30 (11th Cir. 2008)--and challenged when it does not. *See United States v. Rodriguez*, 905 F.2d 372 (11th Cir. 1990).

[10] Of course, a more detailed recitation of the evidence by the prosecutor can often resolve a defendant's initial hesitancy to admit to rather general elements of an offense that can be confusing to a layman. Breaking down the proffered facts into bite-sized morsels, and determining, as to each fact, what the defendant admits and what he denies, often ends up with the defendant acknowledging his guilt by virtue of his admission of facts that prove the elements of the offense.

AO 72A
(Rev.8/8
2)

defendant still wanted to plead guilty, she could have then considered whether to accept an *Alford* plea.[11]

Of course, the defendant could have later challenged the factual basis of his plea. To the extent that he had admitted facts that indicated his guilt of the offense, he could always argue that those admissions were prompted by the pressure that the Presiding Judge was putting on him to admit his guilt. If this latter argument were meritorious, then the factual basis would have to stand on its own, without the defendant's admissions being considered. Yet, any challenges would necessarily constitute a claim of Rule 11(b) error, which would require the defendant to show by a reasonable probability that, but the for the error, he would not have entered the guilty plea. It would not have been a Rule 11(c) challenge that requires no showing of prejudice.[12] *See supra* at 17.

---

[11] This Court is aware that, in articulating what might have been a better way to proceed, it has the luxury of hindsight and the leisure to reflect on these matters: neither of which were available to the Presiding Judge.

[12] As noted, a defendant need show no prejudice if he shows that a trial judge impermissibly became involved in plea negotiations in violation of Rule 11(c).

AO 72A
(Rev.8/8
2)

It is not at all clear that this defendant could make a credible showing that, but for the Presiding Judge's comments, he would not have finalized his plea of guilty. Certainly, nothing in his colloquy up to that point suggested that he was reluctant to plead guilty. Further, he had signed a plea agreement beforehand. In fact, the defendant's brother, Jose Chacon-Vela, entered a plea of guilty to the same charge, based on virtually the same factual basis, a few days after the defendant. Like his brother, Jose has now challenged his guilty plea collaterally.[13] Interestingly, the Presiding Judge made no allegedly "coercive" comments to Jose, but nonetheless he is still attacking the factual basis of his plea.

One could reasonably speculate, given the virtual identity of the factual basis and charge that both brothers pled to, that the Presiding Judge's comments were therefore not a causative factor in defendant Cesar Chacon-Vela's decision to proceed with his plea of guilty. Whatever the judge had said, these two brothers were ultimately going to challenge the factual base of their pleas.

_____

[13] That § 2255 challenge [250] of Jose's was assigned to a colleague of the undersigned's: Judge Richard W. Story.

AO 72A
(Rev.8/8
2)

Moreover, given defendant Cesar's subsequent implicit admission of his guilt to this offense, one can also reasonably infer that the Presiding Judge's comments did not cause the defendant to falsely admit his guilt after the recess. Specifically, in support of his brother Jose's present § 2255 challenge, the defendant has provided a notarized affidavit, under penalty of perjury, indicating that his brother Jose did not know "(3) ...the <u>real purpose of [defendant's] visit</u> to United States of America; (4) that Jose drove the defendant and [his] friend Justo Alberto Lozano[14] to a location and that he <u>[Jose] didn't know what we [the defendant and Lozano] were going to do there</u>; (5) that [defendant] asked [Jose] if he had any knowledge of anybody who would know of some house to rent in Atlanta area ...[and] that <u>[Jose] didn't know that the purpose of the house had anything to do with drugs</u>; (6) that throughout this date (April 11, 2007) [the defendant's] brother <u>[Jose] wasn't aware that a drug transaction was taking place</u>; (7) that the only reason [Jose] let me use his vehicle, was because I didn't have any other means of transportation." (Unsworn

---

[14] The defendant flew in from Mexico with Lozano and was met at the Atlanta Airport by Jose.

Declaration Under Penalty of Perjury of Cesar Augusto Chacon-Vela [248])(emphasis added). The only reasonable inference from the above statements is that defendant Cesar Chacon-Vela is now admitting his knowing participation in the drug conspiracy at issue.[15]

In summary, it could make a big difference in the result here whether one analyzes the Presiding Judge's comments pursuant to a Rule 11(b) analysis used for a claim of a flawed factual basis, under which analysis the defendant would likely lose, or whether instead one analyzes the Presiding Judge's comments under Rule 11(c), which would allow the defendant to vacate his plea without showing that the comments had any impact on his decision to plead guilty.

Yet, as the Presiding Judge never clarified whether the defendant still wished to plead guilty, notwithstanding his claimed lack of knowledge during most of the conspiracy, there is now uncertainty as to what the defendant's answer would have been. Because the Presiding Judge never fully followed up on the defendant's disclaimer of knowledge, there is ambiguity as

---

[15] Presumably, the Government will attempt to use the above affidavit should defendant proceed to trial after any withdrawal of his guilty plea.

30

to whether the defendant's vacillation involved only the facts that he was admitting or instead whether the defendant was wavering about his decision to plead guilty. This uncertainty, combined with comments by the Presiding Judge that clearly violate Rule 11(c) in a case in which a defendant is wavering as to whether to plead guilty, prompts the undersigned to conclude that defendant's plea of guilty should be vacated.[16]

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS** defendant's motion to vacate, set aside, or correct his federal sentence [255].

**IT IS SO ORDERED** this <u>9th</u> day of <u>May</u>, 2012.


/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

---

[16] Given this decision, the Court does not further discuss Grounds 2 or 3.

AO 72A
(Rev.8/8
2)